STATE OF IOWA ex rel. A. D. PUGH, Appellant, v. E. T. MEREDITH et al., Appellees.

CORPORATIONS: Elections—Non-Voluntary Proxy. A proxy is not rendered non-voluntary by the fact that the president of the company sent the stockholder a blank form, with a request that

the stockholder execute the same.   (See Sec. 1821-y, Code Supp., 1913.)   And such a proxy is personal to the one to whom it is addressed, even though such person is described as "president," etc., of the corporation.

INSURANCE: Elections—Solicitation of Proxies.   Whether the pres-
2   ident of an insurance company is an *"agent,"* within the prohibition of Sec. 1821-y, Code Supp., 1913, relating to solicitation of proxies, *quaere.*

CORPORATIONS:   Elections—Improper Solicitation of Proxy.   A
3   vote cast at a stockholders' meeting, under a proxy which the stockholder voluntarily executed, is in no manner invalidated by the fact that the person to whom the proxy was given was guilty of criminal solicitation in obtaining the proxy.   (See Sec. 1821-y, Code Supp., 1913.)

*Appeal from Polk District Court.*—CHARLES A. DUDLEY, Judge.

MAY 17, 1918.

THE opinion states the nature of the case and the material facts.—*Affirmed.*

*A. D. Pugh,* for appellant.

*Sidney J. Dillon,* for appellees.

WEAVER, J.—The National Life Association is a corporation doing a business of life insurance at Des Moines, Iowa. Its articles of incorporation provide for the election of one member of its board of directors at each annual meeting. Each person insured in the association is a member, entitled to one vote, either in person or by proxy, for each $1,000 of insurance carried by him.   At the annual meeting and election held in January, 1916, the defendant E. T. Meredith and the relator, A. D. Pugh, were the only candidates for election to the board of directors.   The votes were as follows:   For the relator, 31 votes cast by members in person and 216 votes cast by proxies; and for Meredith, 45 votes cast by members in person and 1,100 votes cast by proxies.

On behalf of each candidate, objections were raised to the validity of the proxies held by or for the other; but the votes were cast and canvassed as above indicated, and Meredith declared elected. Pursuant to such election, Meredith has been and is recognized as a member of the board, and is acting in that capacity. The relator, claiming to have been elected, demanded admission to the board as a member and offered to qualify as such, but the demand and offer were refused; whereupon he instituted this action in the nature of *quo warranto,* to test the validity of the election and settle the disputed right to said office.

Stated as briefly as practicable, the plaintiff claims that the 31 votes received by him from members in person and the additional 216 cast for him by proxy were all valid and legal, and should be counted in his favor. He admits the validity of the 45 votes cast for Meredith by members in person, but denies the validity of the 1,100 votes cast for the latter by proxy. The alleged grounds for such objection are as follows:

1. That the proxies were given to James P. Hewitt, in his official capacity as president of the association, and therefore to the association, instead of to a member, as required by the corporate articles and by-laws.

2. That Hewitt, with other officers and agents of the association, solicited the proxies, in order to insure the election of a director who would re-elect or retain them in their several positions, and that Hewitt abused his official trust by demanding the proxies in his official capacity and then using them in his own interest, rather than in the interest of the association.

3. That the funds of the association were expended in procuring the proxies.

4. That none of the proxies were given voluntarily, but were the result of a peremptory demand made by Hewitt in his official capacity.

5. That the proxies were not stamped with revenue stamps and stamps cancelled when they were filed with the association.

The defendants denied the several allegations of irregularity in procuring and casting the votes by proxy for Meredith. They further deny that the relator is a member of the association, and allege that he is neither eligible or qualified to be elected to its board of directors.

There was a trial to the court, and judgment entered dismissing the petition. The relator appeals.

While counsel have argued several of the foregoing objections, chief reliance is placed upon the proposition that the proxies used in the election of Meredith were obtained by improper solicitation. It appears without dispute that, on or about December 7, 1915, and in anticipation of the annual meeting and election to be held on January 18, 1916, Mr. Hewitt, with the assistance of some of the officers and employees of the association, addressed a written notice and request to a large number, and perhaps all, of the members of the association, in the following form:

"NATIONAL LIFE ASSOCIATION.

"Des Moines, Iowa, Dec. 7, 1915.

"Dear Member: The annual meeting of this association will be held January 18, 1916. We would like to have you, as a policy holder, represented at this meeting. Will you kindly date and sign your name to the attached stamped proxy card and mail to us immediately?

"Very respectfully,

"James P. Hewitt,

"President National Life Association."

To the postal card on which this communication was sent was attached a return card, addressed to the National Life Association, Des Moines, Iowa, and on this was printed the following matter:

"This proxy should be signed by you and mailed to the home office.

"PROXY.

"Amount $........

"I hereby nominate and appoint James P. Hewitt (president of National Life Association), if present, and if not present, M. W. McCoy (vice president of said association), as my attorney, or proxy, in the order herein named, to represent me and cast my vote by proxy at the annual meeting of the policy holders of the National Life Association of Des-Moines, Iowa, to be held at the home office, January 18th, 1916, hereby ratifying and confirming all my said attorney may legally do by virtue hereof.

"This proxy is given voluntarily and without any solicitation by an agent of the association. Any proxy heretofore given by me for said meeting is hereby revoked.

"Dated .....................

"(Sign here).....................

"Member of National Life Association."

In response to the foregoing, many members signed and returned proxies, as requested, and the votes cast by Hewitt at the election in question as proxy for other members were thus obtained. The theory of the plaintiff's case is that the manner of obtaining such proxies is in violation of law, and that the votes so cast should not be counted. The statute on which this contention is grounded provides, among other things, that an insurance company or association may, by its articles of incorporation, authorize its members or stockholders to "vote by proxies voluntarily given" upon all matters of business at its meetings, including election of directors. To be valid, the proxies must be executed within two months prior to the meeting, and be filed with the company at least one day before the election at which they are to be used. Section 1821-x, Code Supplement, 1913. Other

provisions of the statute relied upon by appellant are as follows:

"Sec. 1821-y. Soliciting of proxies by an agent of the company either for personal use or for the use of officers of the company or association, or for any other persons, is forbidden. Nor shall any of the funds of a company or association be expended in procuring proxies.

"Sec. 1821-z. Any violation of this act shall be deemed a misdemeanor and punishable accordingly."

The record in this respect suggests two inquiries: Was the request sent out by Hewitt for proxies a violation of the statute? If a violation of the statute, as argued by appellant, did it have the effect to invalidate the proxies or to deprive Meredith of the benefit of the votes so cast?

There is nothing in the statute which forbids or renders it improper for the president or other officer of the association to act as a proxy for any member who sees fit to authorize him so to do. The only condition 1. CORPORATIONS: elections: non-voluntary proxy. limiting that right is that the proxy shall be executed within two months, shall be voluntarily given, and be filed with the company not less than one day before the meeting at which it is to be used. There is nothing in this record to justify the conclusion that these disputed proxies were not voluntarily given. No member whose proxy was thus used by Hewitt undertakes to say that he gave it under any constraint or misapprehension, or otherwise than as a matter of his own free will and personal preference. Counsel argue that the card sent out by Hewitt was in the nature of an imperative demand, and of such character as to impress the member to whom it was addressed with the thought that he was under some duty or necessity to comply; but this, we think, is a strained and exaggerated construction of the language employed. It must be assumed that the average member of the association is a person of ordinary intelligence, and knows

that his insurance contract imposes no such obligation up-
on him, and that his vote at any corporate election is his
own, and that, in voting, he may rightfully cast it for whom-
soever he will.  If there be exception to this rule, and any
member acted otherwise than voluntarily, or if coercion or
compulsion was employed to obtain or influence his proxy,
there should be some other evidence of such fact than the
mere profert of the request, which is not at all inconsistent
with his perfect freedom of action.

There is room for question, also, whether the prohibi-
tion of solicitation of proxies by agents covers the act of
Hewitt in sending out the requests.  It is true that the pres-
ident of the association is, for most pur-
poses, its agent; and, if the word as em-
ployed in this particular statute is to be
given this broad signification, then, of
course, his act in this respect was a violation of its terms.
For reasons hereinafter stated, we do not attempt to dispose
of the question so raised.  It is worth while, however, to ob-
serve that the chapter in which these sections are found is
the one in which particular attention is given to the require-
ment of a license to be issued to soliciting agents of life in-
surance companies and associations, and that no other class
or kind of agents is mentioned therein, unless we are to en-
large the scope of that word as it is used in the sections we
have quoted.  It is also to be noted that a distinction seems
to be suggested in the very provision relied upon by appel-
lant (Section 1821-y) when it forbids "solicitation of proxies
by an agent of the company either for personal use or for
the use of officers of the company," etc.  But whatever be the
better or true construction of the statute in
this regard, we are satisfied that, so long as
the proxy is given by a member having a
vote, and is his voluntary act, and the
written authority is executed and filed in the proper time,

2. INSURANCE:
elections:
solicitation of
proxies.

3. CORPORATIONS:
elections: im-
proper solici-
tation of
proxy.

the vote is not invalidated because of the improper solicitation of the proxy. One sufficient reason for this holding is that the statute does not expressly or by implication provide for such result. It is clearly provided that members "may vote by proxies voluntarily given," and the only expressed conditions affecting the validity of such vote are found in the declaration that "No proxy shall be valid unless signed and executed within two months prior to such meeting or election for which the proxy was given," and that "All proxies must be filed with the company at least one day prior to an election at which they are to be used." The clear implication of the quoted language is that, if the proxies conform to these requirements, they are to be treated as valid, and given effect accordingly. As we have already said, there is in this case no evidence that the proxies or any of them were not given voluntarily, and they are none the less voluntary from the mere fact that they were given in response to the request, even the urgent request, of an officer or agent of the association. Practically speaking, no election of any kind is ever held without more or less canvassing and solicitation of voters for support. The purpose of the statute forbidding such solicitation is not to disfranchise the member or members so solicited, but rather to prohibit and punish the misuse by agents of their position in the organization to promote the selfish interests of themselves or of others. If this statute is violated, the demands of justice are satisfied by the punishment of the offender, under the provisions of Section 1821-z, Code Supplement, 1913. It would be rather a perversion of justice to penalize the member giving his proxy by invalidating his vote, not because of any wrong on his part, but because of the wrong of the agent soliciting it, and thus displace an officer chosen by a clear majority, in favor of a candidate receiving a minority vote. By way of illustration, our statute relating to public elections prohibits all electioneering and solicitation of votes

within any polling place, or within 100 feet thereof, and makes a violation of such regulation punishable as a misdemeanor; yet no one will seriously argue that, if any person disregards this prohibition, and electioneers or solicits votes within the prescribed limits, it has the effect to disfranchise the voters who are so wrongfully approached, or to afford any ground for successful challenge of their right to vote when they come to the polls for that purpose. At the annual election which is here contested, there were cast, as we have seen, 1,145 votes for Meredith, as against 247 for the relator. No member of this apparently large majority is produced, to allege or testify that his vote so cast did not express his personal preference between the candidates, or to say that he was in any manner deceived or misled by the solicitation of his proxy, or that the giving of his proxy was otherwise than purely voluntary.

It is argued for appellant that, since the return card on which the proxies were printed was addressed and mailed to the association, they should be considered as proxies given to the association, and therefore as not available for use by Mr. Hewitt. The objection is unsound. The proxies are, in express words, given to Hewitt, or, in case of his absence from the meeting, to McCoy. The form in this respect seems to be unexceptionable. So far as the mailing address was concerned, it was entirely proper that they be sent direct to the association. The statute, as we have seen, provides that all proxies must be "filed with the company" at least one day before the election, and it is quite immaterial whether the member giving his proxy sends it direct to the company or sends it to the person authorized to act for him, if such person files it in time.

The conclusion above announced, that the alleged or admitted solicitation of the proxies is not, of itself, a sufficient objection to the validity of the votes so cast, renders it unnecessary for us to discuss or decide other questions argued

by counsel. The judgment of the district court is correct, and it must be—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.